**YORKAIRE, INC.**

v.

**SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION, LOCAL
UNION NO. 19.**

**Civ. A. No. 87–7579.**

United States District Court,
E.D. Pennsylvania.

Aug. 17, 1990.

Thomas P. Davies, Lancaster, Pa., for
plaintiff.

Ira Silverstein, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

Plaintiff, Yorkaire, Inc., (hereinafter "Yorkaire"), and defendant, Sheet Metal Workers International Association Local 19 (hereinafter "the Union"), were parties to a Collective Bargaining Agreement which established the Sheet Metal Workers Local Joint Adjustment Board as an arbitration panel (hereinafter "the arbitration panel"). On September 23, 1987, the arbitration panel sustained grievances filed by defendant Union and ruled that Yorkaire had violated the Collective Bargaining Agreement. Yorkaire filed a suit in state court on October 2, 1987, claiming that the decision of the arbitration panel should be vacated. On July 15, 1988, following removal to this Court, Yorkaire filed a Motion for Summary Judgment; the Union cross-motioned for summary judgment, arguing that the decision of the arbitration panel should be enforced.

For the reasons stated below, the Union's Motion for Summary Judgment will be granted and Yorkaire's Motion for Summary Judgment will be denied.

## I.

Yorkaire was a member of the Sheet Metal Contractor's Association of Central Pennsylvania (hereinafter "the Association"), an association of employers in the sheet metal industry which negotiated multi-employer contracts with the Union. As a member of the Association, Yorkaire was a party to the Collective Bargaining Agreement negotiated by the Association and the Union which expired on May 31, 1986. This Agreement provided for arbitration of disputes by the Local Joint Adjustment Board, an arbitration panel composed of an equal number of representatives from the Association and the Union.

On January 27, 1986, Yorkaire notified the Association of its intent to withdraw from the Association, and at the same time notified the Union of its intent to negotiate a new contract directly with the Union. By letter dated February 24, 1986, the Union notified Yorkaire of its intent to terminate and/or modify the Collective Bargaining Agreement upon its expiration and invited Yorkaire to contact the Union "... so that negotiations may begin."

The negotiations between the Union and Yorkaire commenced on June 3, 1986. The Union's President and Business Manager, Thomas J. Kelley, was its chief spokesperson at most of the bargaining sessions. These sessions ended on August 13, 1986, when Yorkaire declared that an impasse [1] had been reached in the negotiations. In response, the Union advised Yorkaire that it did not agree an impasse had been reached and that collective bargaining should continue under the terms of the Agreement. Despite the Union's position, Yorkaire unilaterally changed the terms and conditions of the Collective Bargaining Agreement on August 25, 1986,[2] by implementing its last wage offer; it did so without notifying the Federal Mediation and Conciliation Service or the Pennsylvania Bureau of Mediation. The most significant changes unilaterally made by Yorkaire were (1) hourly wages were reduced from $21.65 to $14.00; and (2) employees were hired without a request for referrals from the Union.

Several employees represented by the Union reacted to these steps by refusing to work for Yorkaire at the reduced wage. Other employees apparently continued to work after resigning from the Union. Richard Steward, Business Agent for the Union, stated at the March 3, 1987, meeting of the arbitration panel that the Union did not authorize a strike against Yorkaire, and that individuals who refused to work after August 25, 1986, did so on their own.

---

1. "Impasse" occurs when a deadlock has been reached in negotiations.

2. Up until this point the parties continued to operate under the terms of the Collective Bargaining Agreement because the agreement provided that the contract remained in effect until negotiations were terminated. Art. XXI, sec. 1.

As a result of the action taken by Yorkaire, the Union filed unfair labor practice charges with the National Labor Relations Board (hereinafter "NLRB") on September 29, 1986. It alleged that Yorkaire had violated §§ 8(a)(1) and (5) and 8(d) of the National Labor Relations Act, 29 U.S.C. § 158 (hereinafter "NLRA"). More specifically, the Union claimed that Yorkaire committed unfair labor practices by failing to bargain in good faith and by changing the terms and conditions of the old contract without bargaining to impasse and without notifying the proper federal and state mediation boards.[3]

Separate and apart from the action filed with the NLRB, the Union, on October 8, 1986, filed grievances with the arbitration panel. In the arbitration matter, the Union alleged that Yorkaire (1) violated Article II, Section 1, of the agreement by employing persons who were not journeyman sheet metal workers or registered apprentices on work covered by the Agreement; (2) violated Article III of the Agreement by not requiring that its employees join the Union and by not withholding the work service assessment fee; (3) violated Article IV of the Agreement by hiring new employees without a request for a referral by the Union; (4) violated Article IX of the agreement in ceasing to pay the minimum rate of wages specified in that Article; and (5) violated Article XII of the Agreement in

ceasing to make deductions and/or contributions to the Union and various funds. In addition, on October 31, 1986, Yorkaire sent a letter through its counsel to the Union, expressing its decision to invoke the termination provision of Article XX [4] of the Agreement and giving notice of its intent to withdraw from the collective bargaining relationship. By letter dated November 10, 1986, the Union added the issue of whether Yorkaire had properly invoked Article XX to its list of grievances before the arbitration panel.

Counsel for Yorkaire took the position that the arbitration panel did not have jurisdiction to hear these grievances. It expressed this position and submitted resolution of the jurisdictional issue to the arbitration panel in letters dated October 21, 1986, October 24, 1986, November 6, 1986, and November 19, 1986.[5] Yorkaire argued in the letters, and at a March 3, 1987, meeting of the arbitration panel, that the panel lacked jurisdiction to hear the grievances because: (a) the Agreement was not in effect at the time of the alleged unfair labor practices according to the terms of Article XXI, Section 1,[6] which provided that the Agreement was no longer in effect after negotiations were terminated by either party; and, (b) the issues which the Union sought to arbitrate were expressly excluded from arbitration by Article XVIII, Section 8, of the Agreement.[7]

---

**3.** Yorkaire did not provide these boards with the requisite notices until December of 1986.

**4.** Article XX is a provision entitled "Market Preservation and Recovery." Under Section 1 of this article, the employer agrees that it will refrain from "dual shop" operations. In Section 2, the Union, in consideration for the above guarantee, agrees to provide to the employers "wage scales and work rules that will allow them to compete effectively...." Section 2 also provides that any employer damaged by the Union's failure to implement a Market Recovery Program which allows employers to compete effectively has an unqualified right to terminate its obligations under the Agreement "by means of registered mail to the association and the Union not less than thirty (30) days prior to the date of said termination," and that this decision to terminate is "not subject to grievance procedures or challenge by the Union or its members before any Court or government agency." Finally, Section 2 states that if the employer exer-

cises this option to terminate the Agreement, "upon payment of monies due to employees and Funds, [it is] free of all further obligations thereunder."

**5.** See infra pp. 253–54.

**6.** Article XXI, Section 1, provides:
This agreement shall become effective on the first day of June, 1984 and remain in full force and effect until the last day of May, 1986 and shall continue in force from year to year thereafter unless written notice of the reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of requested reopening is served, this agreement shall continue in force and effect until conferences relating thereto have been terminated by either party.

**7.** Art. XVIII, Section 8 provides:
Nothing contained in this Article shall apply to any controversy or dispute arising out of

On November 21, 1986, after a hearing in which attorneys for Yorkaire participated by telephone, the arbitration panel determined by Motion that it had jurisdiction to hear the grievances. This Motion was executed by Thomas J. Kelley, a member of the arbitration panel who was also the President and Business Manager of the Union and its chief spokesperson during the negotiations with Yorkaire during the summer of 1986.

On December 29, 1986, the NLRB issued a Complaint against Yorkaire. The Complaint was amended on January 27, 1987. The Amended Complaint issued by the NLRB charged that Yorkaire: (a) unilaterally changed the terms and conditions of the Collective Bargaining Agreement without bargaining to impasse and without giving the thirty (30) day notice to the Federal Mediation and Conciliation Service and the Pennsylvania Bureau of Mediation as required by applicable law; and (b) failed to bargain in good faith with the Union by, among other things, withdrawing recognition from the Union in September 1986.

In early 1987, Yorkaire initiated an action in the state court, asking for a stay of the proceedings before the arbitration panel, arguing, *inter alia,* that the arbitration panel's decision on the jurisdictional issue was clearly erroneous. That suit was dismissed without opinion.[8]

On March 3, 1987, the arbitration panel held a hearing on the merits of the Union's grievances. As a preliminary matter, the Union asked the arbitrators to defer deciding whether plaintiff had failed to pay the proper wage rates and fringe benefits until the NLRB had ruled on these issues. In their proposed findings submitted after the hearing, Yorkaire and the Union addressed only two issues—whether Yorkaire violated Article IV of the Agreement in hiring new employees without a request for referral from the Union, and whether Yorkaire improperly invoked the termination provision of Article XX of the Agreement. Accord-

ingly, the arbitration panel decided only those issues.

The members of the arbitration panel at the March 3, 1987, hearing were the Union representatives, Thomas J. Kelley and Dennis Doyle, and the Association's representatives, Albert Forlizzi and Carl Luppold. At the opening of the hearing, Yorkaire requested that Mr. Kelley be removed from the arbitration panel because of his personal involvement in the dispute between Yorkaire and the Union. This Motion was denied. Yorkaire did not raise any objections concerning the jurisdiction of the arbitration panel to rule on the arbitrability issue at this hearing.

On July 21, 1987, after a hearing, the administrative law judge (hereinafter "ALJ") to whom the NLRB assigned the case rendered a decision in which he found that "when in August 1986, the Respondent [Yorkaire] changed unilaterally all the conditions of employment, there was still 'in effect' a collective-bargaining contract between the parties." The ALJ rejected Yorkaire's defense that it was the Union and not Yorkaire which first gave notice of its intent to change the terms of employment and that, therefore, it was the Union which was bound to comply with the reporting requirements. The ALJ consequently concluded that Yorkaire committed an unfair labor practice by unilaterally changing the terms and conditions of employment of its sheet metal workers without first serving appropriate notices upon the Federal Mediation and Conciliation Service and the Pennsylvania Bureau of Mediation and by withdrawing recognition from the Union. The ALJ also stated:

> it may be that it [Yorkaire] violated Section 8(a)(5) because an honest impasse had in fact not been reached in the bargaining that had taken place. In my considered judgment this second theory of the complaint is also supported by the evidence. But no useful purpose will be served by detailing in this decision all the record facts related to that aspect of the

any notice of reopening of this Agreement as provided in Article XVIII thereof.

8. The parties have not argued, nor does the record support, a determination that the dismissal of the 1987 action affects Yorkaire's right to proceed in this case.

case. Even if the second theory were found to be correct, the remedy would still be the same.

On August 14, 1987, Yorkaire filed exceptions to the decision of the ALJ, arguing, based on the case of *John Deklewa & Son*, 282 NLRB 1375 (1987), enf'd., 843 F.2d 770 (3d Cir.1988), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), that it was free to repudiate the Collective Bargaining Agreement upon its expiration. Thereafter, the NLRB issued a Notice to Show Cause why the unfair labor practice Complaint should not be dismissed in light of *Deklewa*.

On September 23, 1987, the arbitration panel issued its decision on the merits. It found that (1) Yorkaire violated Article IV of the Collective Bargaining Agreement by failing to hire from the Union hiring hall; and (2) Yorkaire had improperly invoked the termination provision of Article XX of the Agreement because Yorkaire's ability rightfully to terminate under this provision was contingent "upon payment of the monies due to employees and funds," payments which had not been made by Yorkaire due to its repudiation of the Agreement two months prior to invoking Article XX.

The arbitration panel also found that pursuant to Article XXI, Section 1, the Collective Bargaining Agreement was in effect after the expiration date of May 31, 1986, and after the declared impasse of August 13, 1986, because there was insufficient evidence to establish, as alleged by Yorkaire, that the Union struck Yorkaire and by doing so terminated the negotiations.

On November 30, 1989, the NLRB affirmed the July 21, 1987, decision of the ALJ that Yorkaire had committed unfair labor practices. It rejected Yorkaire's attempt to invoke the principles established in *Deklewa* and to have the complaint against it dismissed as untimely. *Yorkaire, Inc. and Sheet Metal Workers Local Union No. 19*, 297 N.L.R.B. No. 58, NLRB Dec. (CCH) ¶ 15,866 (Nov. 30, 1989)

The present action was initiated by the filing of a Petition to Vacate Arbitration Award on October 2, 1987, in state court; the case was thereafter removed to this Court. Yorkaire asks the Court to vacate the decision of the arbitration panel on the grounds that (1) it had no jurisdiction to resolve the claims presented by the Union, (2) the matters which were the subject of the arbitration were not arbitrable under the terms of the Agreement, and (3) procedural irregularities in the composition of the arbitration panel. The Union contends that the decision of the arbitration panel should be enforced. Yorkaire and the Union have cross-motioned for summary judgment.[9]

## II.

Federal Rule of Civil Procedure 56(c) mandates that summary judgment be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate in this case since there are no material facts in dispute.[10]

### A. Standard of Review of Arbitration Panel's Decision on Jurisdictional Issue.

The first finding the arbitration panel made was that it had jurisdiction to resolve the merits of the Union's grievances. This

---

9. Yorkaire also argued in its Motion for Summary Judgment that because the NLRB had not yet ruled on the pending matters involving Yorkaire and the Union, this Court should "at least consider the possibility of deferring action on the matter pending a decision by the National Labor Relations Board...." This argument is now moot due to the November 30, 1989, decision of the NLRB.

10. Plaintiff has even conceded that it "does not take exception to Defendant's Statement of Undisputed Facts" with one exception which the Court finds to be immaterial to the disposition of the pending Motions. (Plaintiff's Response to Defendant's Statement of Undisputed Facts and Motion for Summary Judgment at 1.)

Court must decide to what extent, if any, it must defer to this determination.

■ Generally, the decision of whether a matter falls within the jurisdiction of the arbitrator is one for the courts as opposed to the arbitrator. *See e.g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The courts, in determining whether a particular dispute is arbitrable under the terms of an agreement, generally pay no deference to any decision rendered by the arbitrator concerning his jurisdiction.

■ There is one exception to this rule which occurs when the parties agree to forego judicial resolution of the arbitrability issue and instead submit the question of jurisdiction to the arbitrator. The Supreme Court has recognized that parties may agree to submit the question of arbitrability to the arbitrator. *See e.g., United Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960). The agreement to do so need not be express; it may be implied from the conduct of the parties. *Teamsters Local Union v. J.H. Merritt & Co.,* 770 F.2d 40, 42 (3rd Cir.1985).

■ If the parties agree to submit the threshold question of jurisdiction to the arbitrator, the courts review the arbitrator's decision in the same way that they review an arbitrator's decision on the merits; they must defer to any decision which draws its essence from the agreement. *See e.g., United States Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). "[I]f on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *George Day Con-struction Co., Inc., v. United Brotherhood of Carpenters and Joiners of America, Local 354,* 722 F.2d 1471, 1477 (9th Cir. 1984). This remains true despite the fact that the basis for the decision is ambiguous, *W.R. Grace & Co. v. Local 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), or that findings of fact or conclusions of law are erroneous, as long as they are not in manifest disregard of the law. *George Day Construction Corp. v. United Brotherhood of Carpenters,* 722 F.2d 1471, at 1477 (9th Cir.1984).

■ To determine the correct standard under which to review the arbitration panel's decision that it had jurisdiction to hear the Union's grievances, this Court must decide whether Yorkaire waived its right to judicial review of this question. Although Yorkaire vigorously argued from the start that the panel did not have jurisdiction to resolve the substance of the Union's grievances, it did not contest the arbitration panel's authority to determine whether the grievances fell within its jurisdiction until after the panel rendered a decision on the merits adverse to Yorkaire.[11] In fact, it was Yorkaire that submitted the jurisdictional issue to the arbitration panel in a series of letters written by its counsel, Harry R. Harmon, to Carl Luppold, an employer representative on the panel. In one such letter dated October 24, 1986, Harmon specifically requested that the panel resolve the arbitrability issue. He stated,

As per your telegram, please be advised that I am willing to appear at a meeting to discuss the issues raised in my letter of October 21, 1986. I think before you officially convene the Local Adjustment Board and process any grievance, *you*

---

11. Indeed, it is unclear from Yorkaire's Petition to Vacate Arbitration Award or its Motion for Summary Judgment whether Yorkaire ever intended to argue that the arbitration panel's award should be vacated because the jurisdictional issue is one for this Court to resolve *de novo* and that, in deciding this question *de novo,* this Court should rule that no jurisdiction existed. To the contrary, upon reading Yorkaire's Petition to Vacate Arbitration Award, it appears that Yorkaire concedes that the panel's resolution of the jurisdictional question must be upheld unless "clearly erroneous." (Petition to Vacate Arbitration Award ¶ 15). However, because Yorkaire mentions in its Motion for Summary Judgment that "the question of arbitrability is one for the Court to decide," (Motion for Summary Judgment at 6), the Court will assume for the purposes of this opinion that Yorkaire is asking the Court to review *de novo* the arbitration panel's decision that it had jurisdiction to hear the Union's grievances.

*must first reach a decision as to whether or not said grievances are properly before you.* (emphasis added)

Yorkaire again expressed its willingness to submit the jurisdictional question to the arbitration panel in a letter to Luppold dated November 6, 1986, in which Harmon wrote,

In response to your letter of October 31, 1986, please be advised that I will be able to attend the Friday, November 21, 1986 meeting. However, Don Doutrich of Yorkaire, Inc. will be unable to attend. *Since it has been my intention all along to have an initial meeting with your Board in order to first rule on the preliminary issues presented,* I did not notify Mr. Doutrich to reserve any date. *I still think that procedure is the proper one to follow. Let's have the meeting on November 21, 1986, at which time the preliminary matters will be disposed of. If for some reason you were to rule that the matter is properly before your Board, then we will have to schedule a time and date agreeable to all parties and witnesses for a full hearing. I am confident, however, that will not be the case and that we will be able to dispose of the entire matter by way of a finding of no jurisdiction, at the Friday, November 21, 1986 meeting.* (emphasis added)

Harmon also wrote a letter to Luppold dated November 19, 1986, in which he stated that he had previously notified Luppold "of the fact that my appearance on November 21, 1986, is for the limited purpose of contesting the jurisdictional/arbitral issue."

In none of these submissions did Yorkaire protest that the jurisdictional issue was one to be resolved by the courts or state that it intended to preserve its right to later judicial review. Nor did Yorkaire challenge the authority of the arbitration panel to resolve the jurisdictional question

at the November 21, 1986, meeting of the arbitration panel. Moreover, the panel itself perceived that Yorkaire had willingly submitted the jurisdictional question to it for resolution. In its Motion passed on November 21, 1986, it stated that it met

to consider the submission by Yorkaire, Inc. attorney, Harry Harmon, of the question of the Board's jurisdiction over the grievances filed by Local #19 and Harmon's submission of the threshold issue of the substantive and procedural arbitrability of the union's grievances (See Harmon letters dated November 6 and November 19, 1986).

Yorkaire had another opportunity to express its unwillingness to be bound by the arbitration panel's resolution of the jurisdictional issue at the panel's March 3, 1987 meeting, but it failed to do so. And although Yorkaire filed in state court a petition to stay the arbitration proceedings on the merits of the Union's grievances, the ground for this petition was that the panel's "finding that it had jurisdiction over the matter is clearly erroneous," [12] not that the panel was without authority to resolve the jurisdictional question. (Petition to Stay Arbitration Proceeding ¶ 17).[13] In fact, Yorkaire did not express the position that the issue of arbitrability was one for the courts until it moved for summary judgment in this Court and made fleeting reference to the principle that "the question of arbitrability is one for the Court to decide." [14]

This case is not unlike *George Day Construction Corp. v. United Brotherhood of Carpenters*, 722 F.2d 1471 (9th Cir.1984). In that case, an employer appealed an arbitration award on the grounds that the collective bargaining agreement had expired and that the arbitration panel lacked jurisdiction to resolve not only the substantive grievances but also the question of arbitrability. The Court of Appeals *found that the employer had submitted the arbitrabil-*

---

**12.** Yorkaire's position that the "clearly erroneous" standard applies is further support for the proposition that Yorkaire waived its right to *de novo* review by this Court of the arbitration panel's decision on the jurisdictional issue.

**13.** This petition was dismissed without opinion on March 2, 1987.

**14.** *See supra* note 11.

ity issue to the arbitrator and that it had waived judicial review. The Court reasoned,

> Had the employer objected to the arbitrator's authority, refused to argue the arbitrability issue before him, and proceeded to the merits of the grievance, then, clearly, the arbitrability question would have been preserved for independent judicial scrutiny. The same result could be achieved by making an express reservation of the question on the record. However, where, as here, the objection is raised, the arbitrability issue is argued along with the merits, and the case is submitted to the arbitrator for decision, it becomes apparent that the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability. *George Day Construction Corp.*, 722 F.2d at 1475.

Based upon the aforementioned facts, the Court concludes that Yorkaire agreed to submit resolution of the arbitrability issue to the arbitration panel. In doing so, it waived its right to contest the panel's jurisdiction in the Court absent a showing that the Board's resolution of this issue was in manifest disregard of the law or failed to draw its essence from the collective bargaining agreement. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *George Day Construction Corp.*, 722 F.2d at 1477.

### B. Decision of Arbitration Panel on Jurisdictional Issue.

Yorkaire argues that the arbitration panel erred for three reasons in ruling that it had jurisdiction to hear the Union's grievances. First, Yorkaire contends that its obligations under the Collective Bargaining Agreement which expired on May 31, 1986, ended on August 13, 1986, pursuant to Article XXI, Section 1 of the Agreement, when Yorkaire unilaterally declared that it was terminating negotiations. Yorkaire argues that the arbitration panel lost jurisdiction to hear any dispute between the parties after that date. The arbitrators concluded that the obligation to arbitrate did not expire at that time.

The Supreme Court has held that the obligation to arbitrate survives the expiration of a collective bargaining agreement when the issues in dispute arise under the agreement even if they arise subsequent to the expiration date. *Nolde Brothers v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 249, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977), *reh. denied*, 430 U.S. 988, 97 S.Ct. 1689, 52 L.Ed.2d 384 (1977). The Third Circuit has applied this rationale to all disputes, not just those involving "accrued rights" under the agreement. *Federated Metals Corp. v. United Steelworkers*, 648 F.2d 856 (3rd Cir.1981), *cert. denied sub nom.*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

■ The arbitration panel decided that Yorkaire's termination of negotiations on August 13, 1986, did not end the duty to arbitrate. This Court cannot conclude that this decision of the arbitrators failed to draw its essence from the Agreement. It is possible that the arbitration panel made this ruling based upon a determination that an "honest impasse" must be reached before negotiations may be terminated and that an "honest impasse" had not been reached in this case. *See Yorkaire, Inc. and Sheet Metal Workers Local Union No. 19*, 297 N.L.R.B. No. 58, NLRB Dec. (CCH) ¶ 15,866 (Nov. 30, 1989) (recognizing that "honest impasse" must be reached under NLRA and determining that evidence supported conclusion "honest impasse" had not been reached). The fact that the panel did not articulate this rationale does not affect the Court's conclusion. *W.R. Grace & Co. v. Local Union 759 International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). *See also Local 863 International Brotherhood of Teamsters v. Jersey Coast Egg Producers*, 773 F.2d 530, 535 (3rd Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1468, 89 L.Ed.2d 724 (1986) ("[A]n opinion and award which might be viewed as confusing and subject to various interpretations should not be set aside so long as one of those interpreta-

tions would support a finding that the award draws its essence from the contract").

Yorkaire's second contention, that Article XVIII, Section 8 of the Agreement expressly excluded the Union's grievances from arbitration because they were disputes "arising out of a[ ] notice of reopening," is also without merit. It was certainly reasonable for the arbitration panel to have concluded that this clause only excluded from arbitration disputes concerning the notice to reopen itself, *e.g.*, whether the notice was timely or adequate to reopen the contract. Therefore, the Court will not disturb the decision of the panel on that ground.

Finally, the Court cannot say that the arbitration panel erred in concluding that the Yorkaire improperly invoked the termination provision of Article XX, Section 2, of the Agreement.[15] That provision clearly states that an employer's ability to take advantage of that termination provision and to free itself of all obligations under the Agreement is contingent "upon payment of monies due to employees and Funds." The arbitration panel interpreted this section of the Agreement as requiring an employer to be in compliance with the Agreement at the time it gives its 30 day notice. The panel concluded that "having repudiated the Agreement in August, 1986, Yorkaire could not, in October, 1986, take advantage of the right to terminate created by Article XX, Section 2." The Court finds that this is a reasonable interpretation of Article XX, Section 2.

## C. Bias of Arbitrators.

Yorkaire contends that the decision of the arbitration panel on the merits of the Union's grievances must be vacated because of alleged irregularities in the composition of the panel. Specifically, Yorkaire objects to the presence on the panel of Union representatives Thomas J. Kelley and Dennis M. Doyle because, as Trustees of various Union Funds, "both Kelley and Doyle would have a fiduciary interest in maximizing contributions to insure the solvency of the Funds." (Plaintiff's Motion for Summary Judgment at 10). Yorkaire also objects to the presence of Kelley on the panel on the ground that he was biased because of his personal involvement in the negotiations between the Union and Yorkaire in the summer of 1986.[16]

Under the Federal Arbitration Act, a court may vacate an arbitrator's award "[w]here there was evident partiality ... in the arbitrators...." 9 U.S.C. § 10(b). The question of what constitutes "evident partiality" has not been clearly answered by the Supreme Court. In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), *reh. denied*, 393 U.S. 1112, 89 S.Ct. 848, 21 L.Ed.2d 812 (1969), a plurality of the Court ruled that this section requires that arbitrators "not only must be unbiased but also must avoid even the appearance of bias." *Id.* 393 U.S. at 150, 89 S.Ct. at 340.

The Courts of Appeals, however, have adopted the rationale contained in the concurrence of Justice White. Justice White reasoned that arbitrators should not be held to the standards of judicial decorum of Article III judges because "[i]t is often that because they [arbitrators] are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function." *Id.* at 150, 89 S.Ct. at 340 (White, J., concurring). Justice White went on to conclude that arbitrators are "not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial." *Id.* at 150, 89 S.Ct. at 340.

Expanding upon this reasoning, the Courts of Appeals that have ruled on this issue have held that the appearance of impropriety alone is insufficient grounds for vacating the award of an arbitrator; rather, the party alleging bias "must establish facts that create 'a reasonable impression

---

**15.** *See supra* note 4.

**16.** Thomas J. Kelley is the Business Manager of the Union and was its primary spokesperson during negotiations with Yorkaire.

of partiality.'" *Toyota of Berkeley v. Local 1095*, 834 F.2d 751 (9th Cir.1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988) (quoting *Steel Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir.1985)). *See also Morelite Construction Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2nd Cir.1984) ("'evident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration").

This showing necessary to prove "evident partiality" is not easily made; the circumstances surrounding the case must be strongly suggestive of bias. *See e.g. Merit Insurance Co. v. Leatherby Insurance Co.*, 714 F.2d 673, 681 (7th Cir.1983), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983) (stating disqualification might be warranted "[i]f circumstances are such that a man of average probity might reasonably be suspected of partiality," but adding, "the circumstances must be powerfully suggestive of bias ..."); *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1150 (10th Cir.1982), *cert. denied*, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982) ("For an award to be set aside, the evidence of bias or interest must be direct, definite, and capable of demonstration, rather than remote, uncertain, or speculative").

Yorkaire has failed to demonstrate that the circumstances in this case create a reasonable impression that the arbitration panel was biased. The arbitration panel was composed of an equal number of representatives chosen by the Union and the Association. Certainly there is an element of partiality inherent in this system, but as the courts have noted, "[t]he parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." *Merit Ins. Co.*, 714 F.2d at 679.

Furthermore, Yorkaire has failed to call to the Court's attention any facts which suggest that particular members of the panel were materially more biased than was contemplated by the parties when they initially agreed to the arbitration scheme. The fact that Thomas J. Kelley was a Trustee of the Health and Welfare, Annuity, Pension, and Vacation Funds, and that both he and Dennis M. Doyle were Trustees of the Sheet Metal Workers Joint Apprenticeship and Training Fund of Central Philadelphia, is not demonstrative of evident partiality of the arbitration panel. Yorkaire's reliance on *United Retail & Wholesale Emp. v. Yahn & McDonnell*, 787 F.2d 128 (3rd Cir.1986), *aff'd*, 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987), for this proposition is misplaced. In *United Retail*, the Court of Appeals held that it violated an employer's due process right to an impartial decision maker for the trustees of a pension plan to sit on a panel which initially determined an employer's liability to that plan upon withdrawal. In that case, the Court held that the scheme was improper because the trustees were inherently biased in favor of maximizing employer contributions to the pension plan due to their fiduciary duty to the plan.

The decision in *United Retail* has no bearing upon this case where the issues in dispute before the arbitration panel did not concern the Funds to which the Trustees owed a fiduciary duty. It is not reasonable to conclude that Kelley's and Doyle's trusteeships had any material bearing upon their ability to rule upon the jurisdictional question or the questions whether Yorkaire violated Articles IV and XX of the Agreement. Their partiality is no more than inheres in the method of dispute resolution chosen by the parties.

Yorkaire has also failed to prove Thomas J. Kelley's participation in the negotiations between Yorkaire and the Union as President and Business Manager of the Union is evidence of "evident impartiality." The mere fact that Kelley attempted to negotiate a new contract for the Union with Yorkaire is insufficient to establish that he was materially more biased against Yorkaire than any other representative of the Union would have been.

**258**

The Third Circuit's opinion in *United Steelworkers of America v. Union R. Co.*, 648 F.2d 905 (3rd Cir.1981), although not directly on point, supports this conclusion. In *United Steelworkers*, the plaintiff had been dismissed from employment with the Railroad. He appealed the decision of an arbitration panel which upheld his dismissal, the Public Law Board, on the ground that it was improper for the individual who had advised him in his first appearance before the Board to be a member of the Board during his second hearing. The District Court held that the plaintiff had been denied his right to counsel because of the conflict of interest created when the person who had formerly represented plaintiff sat in judgment of his case. The Court of Appeals reversed. It reasoned that members of an arbitration panel are "not in legal contemplation, or in fact, supposed to be neutral arbitrators," *Id.* at 913 (quoting *Arnold v. United Air Lines, Inc.*, 296 F.2d 191, 195 (7th Cir.1961)), and concluded that it was not a *per se* violation of the Railway Labor Act for a union member of a board to serve as an employee's representative. The Court concluded that the union member's "dual role as representative and Board member is not a proper ground for setting aside the findings of the Board." *Id.*

For the reasons stated above, the Motion of defendant, Sheet Metal Workers International Association, Local No. 19, for Summary Judgment is granted, and the Motion of plaintiff, Yorkaire Inc., for Summary Judgment is denied.