613 A.2d 1049

**Lloyd R. GRACEMAN, et ux.**

v.

**Jerry R. GOLDSTEIN, et al.**

**No. 34, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Oct. 7, 1992.

Elbert R. Shore (John T. Bell and Bell, Shore & Rehder, on the brief), Rockville, for appellants.

Leonard A. White (Goldstein, Handler & White, P.C., on the brief), Bethesda, for appellees.

Argued Before BLOOM, WENNER and MOTZ, JJ.

MOTZ, Judge.

An arbitrator awarded appellants, Lloyd and Leila Graceman, $72,268.69 in their dispute against appellees, Jerry Goldstein and seven other investors (the "Buyers"), who

purchased the stock of a women's apparel business from the Gracemans. The Circuit Court for Montgomery County vacated the award, principally because it found that the arbitrator of the dispute between the Gracemans and the Buyers exhibited "evident partiality" in favor of the Gracemans and, secondarily, because a "significant and substantial question" existed as to whether the arbitrator exceeded his power in determining the amount of the award. Because the conduct allegedly evidencing the arbitrator's "partiality," although known to the Buyers, was not objected to prior to the arbitration award, because post-award "partiality" cannot form the basis for vacation of an award, and because the arbitrator did not exceed his jurisdiction, we reverse.

(i)

In 1987, the Gracemans were the sole stockholders and officers of Mademoiselle Fashions, Inc. ("MFI"), a chain of women's ready-to-wear stores. At that time, both the business and Mr. Graceman's health were in decline. Arrangements were made for the sale of the MFI stock to a group of investors, who intended to revitalize the corporation by paying off its old debts and "buying new merchandise and fixing up the outdated stores." On March 2, 1987, the Gracemans signed a Letter of Intent that had been executed by the Buyers' representative, in which the Buyers agreed to buy the stock of MFI for a purchase price of $100,000. In the Letter of Intent, which because of the haste of negotiations served as the contract between the parties, the Buyers agreed to pay the Gracemans $9,500 at closing. In addition, the parties agreed, in paragraph 2 of the Letter of Intent, that the Buyers "will pay to Sellers [the Gracemans] the sum of $90,500.00 ... The $90,500 will be paid as follows: (a) $10,500 to be paid 90 days after closing provided that as of the date of Closing there is at least $100,000 of good and salable inventory at cost on . order on a non-C.O.D. basis.... (b) $80,000 in the form of a promissory note from the Corporation payable at a 10%

interest per annum...." As additional consideration for the stock transfer, the Letter of Intent provided that the Buyers would individually indemnify the Gracemans on their guaranty of a loan to MFI from Citizens Bank of Maryland.

The Letter of Intent also set forth a list of "Representations and Warranties of Sellers." The list contained numerous warranties, including stipulations that all non-vendor bills were current and no leases were in default; accounts payable to trade vendors did not exceed $355,000 as of January 31, 1987; MFI had on order, received, or approved for delivery after February 1, 1987, at least $100,000 of good and salable inventory at cost on a non-C.O.D. basis; MFI had at least $500,000 in inventory on hand at the lower of cost or market value; MFI's balance sheet and profit and loss statement fully and accurately presented the corporation's entire financial position; and the Gracemans had "neither made nor have knowledge of any representations to or agreements with any vendors regarding payment of outstanding accounts payable."

At closing, the Buyers paid the Gracemans $9,500 and gave them a promissory note in the amount of $90,500 from MFI. Although it was apparently undisputed that at closing there was "at least $100,000 of good and salable inventory at cost on order on a non-C.O.D. basis," the Buyers did not pay $10,500 to the Gracemans 90 days after closing as required by paragraph 2(a) of the Letter of Intent. Indeed, after making an initial payment of $754.17 on the $90,500 promissory note, neither the Buyers nor MFI paid the Gracemans any more money under paragraphs 2(a) or 2(b) of the Letter of Intent, because the Buyers asserted that they had discovered numerous breaches of warranties by the Gracemans, upon taking over MFI. In March 1988, MFI went out of business; shortly thereafter, some of MFI's creditors filed an involuntary bankruptcy petition against the corporation.

At the time MFI failed, a portion of the Citizens Bank loan was still outstanding and the Gracemans paid it off in

March 1988, in the amount of $46,597. In September 1989, the Gracemans filed suit for indemnification in the amount of $46,597. The Buyers responded by asserting their claims against the Gracemans and filing a demand for arbitration as provided in the Letter of Intent. The parties ultimately agreed to submit their disputes to "binding arbitration before the American Arbitration Association." In arbitration, the Gracemans sought to recover $46,597.08 in principal amount and $15,944.05 in interest for breach of the indemnification agreement; $10,500, the amount due under paragraph 2(a) of the Letter of Intent from the Buyers ninety days after closing, and interest on that amount at 10% per annum from June 4, 1990 through December 1, 1990; $79,245.83, "the outstanding balance on paragraph 2(b) of the Letter of Intent" ($80,000 − one payment of $754.17 = $79,245.53); and further "interest at 10% per annum." In turn, the Buyers sought to recover $1,005,702 in compensatory and punitive damages and other costs. The amount sought by the Buyers represented alleged losses due to "inventory misrepresentation", "accounts payable misrepresentation", unpaid bills, and "loss of investment", *minus* credits to the Gracemans for the $46,597.08 debt paid by the Gracemans to the Citizens Bank and the $90,500 corporate promissory note.

A series of arbitration hearings were held, usually in Rockville, Maryland. Due to Mr. Graceman's poor health and inability to travel, however, his testimony was taken in Florida, where he had moved. On January 28, 1991, the arbitrator awarded the Gracemans $72,268.69 and denied all of the Buyers' claims. The arbitrator issued no findings of fact or explanation as to how this award was computed. On February 27, 1991, the Buyers filed a petition to vacate the award. In support of their petition, the Buyers asserted that the arbitrator (1) exceeded his powers in calculating the award, because he included damages based on the promissory note of the corporation that was in bankruptcy and not a party to the proceedings; (2) misled the Buyers by ruling "that the corporate note ... was not an issue in

the case and then making an award based at least in part upon it after defendants did not deal with the issue in their post-hearing brief in reliance upon the arbitrator's ruling"; and (3) "exhibited evident partiality by telling [Buyers' counsel] during a break in the hearing how sorry he felt for Lloyd Graceman because of Graceman's poor physical condition and how 'very brave' Graceman was to testify in his condition." The petition to vacate was supported by a number of exhibits, including the affidavit of the Buyers' counsel. In that affidavit, the Buyers' attorney stated that the arbitrator, in a private hallway conversation, indicated sympathy for Mr. Graceman and, at the conclusion of the hearings, stated that the $90,500 note was solely "a corporate obligation" and so not "an issue in the case" and for this reason the note was not discussed by the Buyers in their post-hearing briefs.

The Gracemans filed a motion to confirm the award and in opposition to the petition to vacate. The Gracemans attached to their motion an affidavit that they had secured from the arbitrator in which he denied the assertions of the Buyers' counsel. Specifically, the arbitrator stated that his recognition of Mr. Graceman's poor physical condition "did not in any way cause" him to favor the Gracemans, and that he had never indicated that the corporate note was "not an issue in the case" or directed the Buyers not to discuss the corporate note in their post-hearing brief. The Buyers responded to the Gracemans' motion, asserting, *inter alia,* that the fact that the Gracemans had obtained an "ex parte affidavit" from the arbitrator "demonstrate[s] conclusively the ethical blind spot of the arbitrator in this case."

On September 5, 1991, a hearing was held in the circuit court. There, the Buyers again reiterated their claims that the arbitrator wrongfully based at least part of the award on the corporate note and was unfairly biased for the Gracemans. In support of the latter claim, the Buyers asserted that, in addition to submitting an affidavit in support of the Gracemans and acknowledging sympathy for

Mr. Graceman's condition, the arbitrator was seen driving with the Gracemans to or from the airport in Florida. The circuit court issued oral findings in which it initially concluded that "there is a significant and substantial question as to whether the [arbitrator] in this case exceeded his power by awarding more than $62,541 [the total of the principal and interest on Citizen's Bank debt]." Then, as its "major holding," the court found that "the actions taken by the [arbitrator] in filing an affidavit, under the circumstances in this case, to support and seek to uphold the award, constitutes ... evident partiality." The lower court found that the alleged conversations about Mr. Graceman's health and "ride back and forth to the airport" were insufficient grounds "to cast doubt upon the award," but found the fact that the Gracemans' attorney apparently drafted the arbitrator's affidavit "suggests collaboration far beyond any normal, and suggests evident partiality, as well as prejudicial misconduct."[1] The court then ordered the award vacated.

### (ii)

■ Under Maryland's Uniform Arbitration Act, a circuit court in Maryland has no authority to vacate an arbitration award unless:

 (1) The award was procured by corruption, fraud, or other undue means;

 (2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

 (3) The arbitrators exceeded their powers;

---

1. The court concluded that the Gracemans' counsel drafted the arbitrator's affidavit based on a quote from the affidavit contained in one of the Gracemans' briefs that had two sentences, one of which appeared in the affidavit and one of which did not. The Gracemans acknowledged that their counsel drafted the affidavit based on a conversation with the arbitrator and submitted the draft to the arbitrator for his approval. The arbitrator deleted at least one of the sentences in the draft prepared by the Gracemans' counsel.

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing contrary to the provisions of [Md.Cts. & Jud.Proc.Code Ann.] § 3–213, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement as described in § 3–206, the issue was not adversely determined in proceedings under § 3–208, and the party did not participate in the arbitration hearing without raising the objection.

Md.Cts. & Jud.Proc.Code Ann. § 3–224(b) (1989). Thus, the circumstances under which an arbitration award may be vacated are very narrow. *See Communications Equip. Workers, Inc. v. Western Elec. Co.,* 320 F.Supp. 1277, 1280 (D.Md.1970) ("a reviewing court cannot look to the merits of an arbitration award and a court cannot overturn the decree unless it is found that the award lacks any facts to support it or that the decree is not within the essence of the contract").

The principal basis upon which the circuit court vacated the award here is "evident partiality." Md.Cts. & Jud.Proc. Code Ann. § 3–224(b)(2). A finding of " 'evident partiality' requires more than speculation and bald allegations of bias." *Wyndham v. Haines,* 305 Md. 269, 279, 503 A.2d 719 (1986). "The moving party must prove facts sufficient to permit an inference that there was indeed partiality by an arbitrator." *Id.* Here, the Buyers base their claim of arbitrator's bias on the arbitrator's conduct during two different periods, *i.e.,* after the award was ordered and during the actual arbitration proceedings. We address each in turn.

 The Buyers identify post-award evidence of partiality as (a) collaboration between the Gracemans and the arbitrator on the arbitrator's affidavit; and (b) a "courthouse meeting" between the arbitrator and the Gracemans' counsel "immediately following the September 5th hearing,

even going into a private conference room behind a closed door." The Gracemans acknowledge this conduct but maintain that it "does not show bias." They explain that, after they learned for the first time from the affidavit of the Buyers' counsel (attached to the Buyers' motion to vacate) that he had a private conversation with the arbitrator in which the arbitrator had allegedly said that Mr. Graceman was "very brave," a "very sick man" and that the arbitrator was "amazed" at Mr. Graceman's ability to testify, they contacted the arbitrator "to find out if [the Buyers' allegations] were true." When the arbitrator replied that they were not and agreed to file an affidavit setting forth the arbitrator's recollection of events, the Gracemans' counsel "prepared an affidavit and submitted it to the arbitrator." The arbitrator made some revisions and deletions to the draft, indicating his "unwillingness to attest to a point that favored the Gracemans and thus retaining his neutrality throughout the post-award hearings," and the revised affidavit was then filed. When the Buyers suggested that the arbitrator's affidavit itself indicated his bias, the Gracemans subpoenaed the arbitrator to appear as a witness at the circuit court hearing. After it became apparent that there would be no witnesses at the hearing, counsel for the Gracemans found the arbitrator in the courthouse library and "rather than disturb library patrons" went into "a conference room where this information was imparted to the Arbitrator."

In our view, this explanation is entirely plausible. There is absolutely nothing in the record that in any way indicates this is not precisely what happened. Although the Buyers put a more sinister gloss on these facts, even they do not offer any evidence to the contrary. The circuit court considered the Gracemans' explanation as to how and why the affidavit came to be prepared, however, and was not satisfied with it. Specifically, the lower court rejected the Gracemans' argument that the arbitrator's affidavit was sanctioned by Maryland Rule 2–311(d):

I do not agree with the interpretation of the rule read by [the Gracemans' counsel]. The rule as I read it, the rule as I interpret it, says that when evidence outside the record needs to be rebutted or offered, an affidavit is appropriate. Nowhere does it say that the affidavit is appropriate from the arbiter [sic] who decided the case, and certainly an affidavit of this kind is not appropriate. Rule 2–311(d) provides:

(d) **Affidavit.**—A motion or a response to a motion that is based on facts not contained in the record or papers on file in the proceeding shall be supported by affidavit and accompanied by any papers on which it is based.

The language of the rule itself does not in any way suggest that it is inapplicable to a motion to confirm or vacate an arbitration award or opposition thereto, or to an arbitrator's affidavit in support of such a motion or opposition.[2] Moreover, in *Wyndham v. Haines*, the Court of Appeals clearly indicated that Rule 2–311(d) is applicable in these contexts. There, the Court noted, without criticism, that a party had submitted an arbitrator's affidavit in support of its motion to dismiss an appeal from an arbitration award and its opposition to a petition to vacate the award. 305 Md. at 271 n. 1 and 272 n. 3, 503 A.2d 719. Furthermore, and perhaps even more significantly, the *Wyndham* court held that those seeking to vacate the arbitration award on the ground of the arbitrator's "evident partiality" had "failed to adduce the required proof" because "[t]heir petition to vacate was unsupported by affidavit *despite the mandate* of Md. Rule

---

**2.** The Buyers assert that the arbitrator's post-award conduct violated the Code of Ethics for Arbitrators in several respects. Most of the code sections upon which the Buyers rely appear to govern pre-arbitration award conduct. The one section governing post-award conduct provides in pertinent part:

After an arbitration award has been made, it is not proper for an arbitrator to assist in any post arbitration proceedings, *except as may be required by law.*

Canon VI C of the Code of Ethics for Arbitrators. (emphasis added.) Rule 2–311(d), particularly as interpreted by the *Wyndham* court, would seem to make the affidavit here one "required by law."

2–311(d)." 305 Md. at 279, 503 A.2d 719. (emphasis added.) Thus, rather than being evidence of bias, it well may be that the arbitrator's affidavit was necessary here; that is, without it the Gracemans' opposition (like the plaintiffs' motion in *Wyndham*) would have failed for lack of the "required proof." *See also Robinson & Wells v. Warren*, 669 P.2d 844, 846 (Utah 1983); *Kauffman v. Haas*, 113 Mich.App. 816, 318 N.W.2d 572, 574 (1982); Annot., "Arbitrator's Testimony—Admissibility" 80 A.L.R.3d 155, 201–05 (1977).

▪ Even if the preparation of the post-award affidavit or the post-award "courthouse meeting" between the arbitrator and the Gracemans' counsel did indicate arbitrator bias (which we do not believe they did), however, that would be irrelevant to a motion to vacate the arbitration award. This is so because the question to be addressed by a court in determining when an arbitration award is to be vacated for "evident partiality" is "whether the arbitration *proceedings* were fundamentally unfair." *Forsythe Intern., S.A., v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1020 (5th Cir.1990) (*citing Teamsters, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 906 (5th Cir.1984)) (emphasis added). *See also Transit Cas. Co. v. Trenwick Reinsurance Co. Ltd.*, 659 F.Supp. 1346, 1354 (S.D.N.Y.), *aff'd*, 841 F.2d 1117 (1987) (arbitrator misconduct "must amount to a denial of fundamental fairness *of the arbitration proceeding* in order to warrant vacating the award") (emphasis added).[3] A trial court's review should focus not on the conduct of an arbitrator after an award has been rendered, but on the impartiality of the arbitrator during the proceedings.

Recently, in *Cobler v. Stanley, Barber*, 217 Cal.App.3d 518, 265 Cal.Rptr. 868 (1990), a California appellate court rejected a claim of post-award bias in a similar case in

---

**3.** *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds,* 748 F.2d 79 (2d Cir.1984), the only case relied upon by the Buyers on this point is not to the contrary. There, the arbitration award was vacated not because of any post-award conduct of the arbitrator, but because the arbitrator was the son of an officer of one of the parties to the arbitration.

which an arbitrator whose award was challenged for bias filed an affidavit in support of the award. The California court reasoned:

> *[T]he pertinent time for any inquiry into bias is before the arbitration decision was rendered.* We think the arbitrator overexuberant in rising to such vigorous defense of the merits of his own decision in response to allegations of bias. We believe an arbitrator, like a trial judge, should rely on the decision itself if any challenge is made. However unseemly the arbitrator's vigorous post-decision advocacy may have been, it does not demonstrate any bias or prejudice *in reaching a decision in this case.*

*Id.*, 265 Cal.Rptr. at 874 n. 7 (emphasis added). The Buyers assert that *Cobler* is inapposite here because the arbitration winner in *Cobler* obtained the lower court's permission prior to contacting the arbitrator. This factual distinction, particularly in view of Md. Rule 2–311(d) and *Wyndham*, does not make *Cobler* inapplicable here. Rather, the similarities between it and the case-at-hand—both involve charges of an arbitrator's post-award bias because of the arbitrator's defense of his arbitration award and attempt to discredit allegations of his bias—make *Cobler* a compelling precedent here. *See also Lents, Inc. v. Santa Fe Engineers, Inc.*, 29 Wash.App. 257, 628 P.2d 488, 493 (1981); *Aetna Cas. & Sur. Co. v. Grabbert*, 590 A.2d 88, 96–97 (R.I.1991). In sum, the court below erred in concluding that the arbitrator's post-award conduct constituted ground for a finding of "evident partiality."

■ The Buyers, however, have also identified a number of instances of pre-award conduct that they contend reveal the arbitrator's bias against them throughout the proceedings. In their original petition to vacate, the Buyers alleged that the arbitrator told their counsel during a break in the hearing how sorry he felt for Mr. Graceman because of his poor physical condition and how "very brave" Mr. Graceman was to testify in his condition. In their memorandum opposing the Gracemans' motion to confirm the award, the Buyers added that the arbitrator's bias was further exhibit-

ed by his decision that Mr. Graceman's testimony be taken in Florida "without any medical evidence of his inability to travel even after requiring such medical evidence" and the fact that the arbitrator "rode to the Florida hearing and to the airport with the Gracemans and their counsel." [4]

■ As recognized by the trial court, the Buyers are too late in their assertions of bias based on the arbitrator's conduct during the proceedings. If, in fact, the Buyers were so troubled by this conduct, it was their obligation to raise a formal objection at the time of that conduct by the arbitrator. They did not do so; thus, they waived their right to object after the award was rendered. It is well-established that parties to an arbitration waive their objections to arbitrator bias or other allegedly improper behavior by the arbitrator if, knowing of the alleged, biased, or improper conduct, they do not object to it prior to the arbitration award when there is still an opportunity to rectify the alleged errors. *Baltimore & O.R.R. Co. v. Canton Co.*, 70 Md. 405, 409, 17 A. 394 (1889) (arbitration award voidable for arbitrator's bias "unless" parties "having knowledge of his disqualification, waive the objection or preclude themselves by their acquiescence or laches from taking advantage of it"). *See National Post Office v. U.S. Postal Service*, 751 F.2d 834, 842 n. 4 (6th Cir.1985); *Barcon Associates v. Tri–County Asphalt Corp.*, 86 N.J. 179, 430 A.2d 214, 222 (1981); *R.E. Bean Constr. Co. v. Middlebury Assoc.*, 139 Vt. 200, 428 A.2d 306, 311–12 (1981); *LeBow v. Bogner–Seitel Realty, Inc.*, 55 A.D.2d 695, 389 N.Y.S.2d 51, 53 (1976); *Alaska State Housing Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1248 (Ala.1978). *See also*

---

4. On appeal the Buyers assert for the first time that the award itself exhibited bias, because the arbitrator allegedly awarded damages to the Gracemans based on the promissory note after ruling it "was not an issue in the proceeding" and denied a claim by the Buyers for a $4,450 unpaid rent bill "which was warranted under the Contract and which Graceman admitted should have been paid by him." These claims were never raised below and so are not preserved for appellate review.

672

*Braxton v. Faber,* 91 Md.App. 391, 407, 604 A.2d 543 (1992) ("it is incumbent upon counsel [during trial] to state with clarity the specific objection to the [allegedly biased] conduct and ... make known the relief sought" when challenging a trial court for bias).

Specifically, had the Buyers truly believed that the arbitrator was improperly sympathetic to Mr. Graceman, that the shared airport ride evidenced bias, that Mr. Graceman's testimony should not be taken in Florida without direct evidence of his poor health and that the arbitrator's decision to the contrary exhibited bias, they should have so stated at the time.[5] The Buyers' statement that their counsel on several occasions reiterated that "Mr. Graceman's health problems, while unfortunate, were not relevant to the merits of the case" is obviously not an objection or even a suggestion of arbitrator bias. "Where a party has knowledge of facts possibly indicating bias or partiality on the part of the arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground." *Cook Industries v. C. Itoh & Co.,* 449 F.2d 106, 108 (2nd Cir.1971). *See also R.E. Bean Construction, supra,* 428 A.2d at 311; *Alaska State Housing Auth., supra,* 586 P.2d at 1248; *LeBow v. Bogner–Seitel, supra,* 389 N.Y.S.2d at 52.

(iii)

█ While citing "evident partiality" as the chief reason for vacating the award, the circuit court also found that "[t]here is a significant and substantial question as to whether the [arbitrator] in this case exceeded his power by awarding more than $62,541." [6] This brief finding is appar-

---

5. It seems unlikely that the Buyers actually felt that taking Mr. Graceman's testimony in Florida was unreasonable or evidence of bias, however, given their own admission that, even at the time Mr. Graceman sold MFI, he was "in very poor health."

6. The circuit court did *not,* as the Buyers represent, "conclude ... that the arbitrator exceeded his authority"; moreover, there was no finding that the arbitrator's decision was "completely irrational." *See*

ently based upon the Buyers' argument that the $90,500 promissory note, because it was guaranteed only by MFI and not by the Buyers as individuals, was out of the domain of the arbitrator. They assert that, accordingly, the most the arbitrator could have awarded the Gracemans was the sum of the balance of the Citizen's Bank obligation, for which they promised to indemnify Mr. Graceman, plus interest, totalling $62,541.13. Further, they maintain that it was only because the arbitrator assertedly made it clear that he would not even consider the MFI promissory note, that they did not discuss the note in their post-arbitration brief.

Notwithstanding their adamancy over this issue, the Buyers are not persuasive for several reasons. First, their contention that basing the award on any portion of the corporate note is "completely irrational" conflicts with their own initial claim against the Gracemans, in which they offered a credit to the Gracemans for the *entire* $90,500 corporate note. Moreover, the record does not support their assertion that the arbitrator firmly asserted that the corporate note was not "an issue in the case." Buyers' counsel did so state in his affidavit but the arbitrator expressly denied this in his affidavit:

> At no time prior, during, or subsequent to the hearing until I rendered a decision on the case did I state or rule that the Gracemans' claim was limited to the recovery of indemnity for their payment of the Citizens Bank note. At no time did I rule or state that the Gracemans were precluded from arguing for recovery of amounts due and unpaid under the Letter of Intent for the payment of the stock; nor did I rule that the "corporate note was not an issue in the case" or that the Gracemans could not argue for recovery of amounts unpaid under the note or other sums. At no time did I instruct the parties to exclude from the post hearing briefs all arguments on the corporate note or amount due under the Letter of Intent. To

*Snyder v. Berliner Construction, supra,* 79 Md.App. 29, 37, 555 A.2d 523.

the contrary I received evidence and I expressed openness to arguments on all claims asserted by both parties and made my ruling after the submission of the post hearing briefs.[7]

Furthermore, it is not at all clear that the award was in any way based on the corporate note. Although the Buyer gave the Gracemans a corporate note for $90,500, the Buyers in the Letter of Intent clearly obligated themselves *individually* to pay $10,500 to the Gracemans 90 days after closing, with only the additional $80,000 to be paid in installments by the corporation.[8] The Buyers argued that the parties intended the undated corporate note to supersede the Letter of Intent. The arbitrator, however, could well have concluded that the documents were clear on their

---

**7.** The arbitrator's affidavit illustrates what may have been at the core of the problem of whether the "corporate note" could or would be considered by the arbitrator. The Buyers repeatedly insist that the only source of recovery for the Gracemans was the indemnification of the Citizens Bank debt (principal and interest of $62,541.13); the $90,500 promised in the corporate note could not be recovered by the Gracemans because the corporate obligor was bankrupt. The Gracemans, on the other hand, claim that, in addition to the Citizens Bank indemnification, they were entitled to receive $10,500 and $80,000 (and interest on those amounts) *not* because of the corporation's promise in the corporate note, but because of the promises of the Buyers in the Letter of Intent. Thus, although the parties discuss the same sum—$90,500—they base their arguments on different documents and different theories.

**8.** As indicated within, the arbitrator awarded the Gracemans $72,268.69 without stating what amounts were included in this award. Thus, it is unclear how that figure was determined and the parties do not attempt to enlighten us. The sum of the principal and interest on the Citizen's Bank obligation, $62,541.13 *and* the amount of the Buyers personal obligation under paragraph 2(a) of the Letter of Intent, $10,500, is $73,041.13. If the Buyers' first (and only) installment payment under paragraph 2(b) of the Letter of Intent and under the corporate note, $754.17, is deducted from $73,041.93, the result is $72,286.96. That amount is identical—except for transposed numbers—to the amount of the actual award of $72,268.69. Thus, it seems likely that the arbitrator's award to the Gracemans was not only based on liability other than the corporate note, but also that the Buyers got "credit" for all payments made pursuant to that note and in addition a mathematical error, in their favor, of $18.27.

face, that the Letter of Intent obligated the Buyers as individuals to pay the Gracemans $10,500, *See Board of Trustees v. Sherman,* 280 Md. 373, 373 A.2d 626 (1977), and that this obligation was not superseded by a note executed by the corporation. *See Ruberoid Co. v. Glassman Constr. Co.,* 248 Md. 97, 104, 234 A.2d 875 (1967). The Gracemans, in the promissory note, did not explicitly absolve the Buyer from any individual liability for the $10,500. *See In re International Harvester's Disp. of Wis. Steel Lit.,* 681 F.Supp. 512, 523 (N.D.Ill.1988) (former employer who conveyed business to successor employer remained liable to the Pension Benefit Guaranty Corporation for benefits paid to former employees when successor employer went bankrupt); *Martinesi v. Tidmore,* 158 Ariz. 53, 760 P.2d 1102, 1104 (1988) (owner who conveyed property subject to purchase option prior to exercise of option not relieved of liability for subsequent breach of option agreement by guarantee, where option holder did not consent to release owner from liability); Restatement (Second) Contracts § 318(3) (1981).

A circuit court should reverse an arbitrator's award only where the award "cannot be supported by any rational construction of the parties' *substantive contractual provisions." Snyder v. Berliner Construction, supra,* 79 Md. App. at 37, 555 A.2d 523 (emphasis in original). If, on its face, the award represents a plausible interpretation of the contract between the Gracemans and the buyers, "judicial inquiry ceases and the award must be enforced." *Local, No. 359 v. Arizona Mechanical & Stainless,* 863 F.2d 647, 653 (9th Cir.1988) (*citing George Day Const. Co. v. United Bd. of Carpenters,* 722 F.2d 1471, 1477 (9th Cir.1984)). "This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions." *Local, No. 359,* 863 F.2d at 653 (*citing American Postal Workers v. United States Postal Service,* 682 F.2d 1280, 1284 (9th Cir.1982), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983)). *See also Yorkaire, Inc. v. Sheet Metal*

*Workers Intern. Ass'n, Local Union No. 19,* 758 F.Supp. 248, 255–56 (E.D.Pa.), *aff'd,* 931 F.2d 53 (1990). Judicial deference is inappropriate "only when the arbitrator's award actually violated the law or any explicit, well-defined and dominant public policy." *Local No. 359,* 863 F.2d at 653 (*citing United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Here, it is clear that the Letter of Intent contained a substantive contractual provision mandating that, if there was at least $100,000 of good and salable inventory at MFI at closing—a requirement which seems to have been undisputedly satisfied, but which, in any event, the arbitration would certainly have concluded was satisfied—the Buyers would pay the Gracemans $10,500 within 90 days after closing. Thus, the arbitrator did not exceed his powers in resolving this dispute as he did, and the circuit court's vacation of the arbitration award was erroneous.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.