**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant,**

**v.**

**0.459 ACRES OF LAND CONSISTING OF THE FOLLOWING: PARCEL NO. 6A ESTATE THOMAS KINGS QUARTER AND PARCEL NO. 9A, ESTATE THOMAS, VIRGIN ISLANDS and the Long Bay Trust, Appellees,**

**v.**

**Leo Francis, as Commissioner of the Department of Public Works and Delma Hodge, as Commissioner of the Department of Property and Procurement of the Government of the Virgin Islands. Third Party Appellants.**

**No. CIV.A.1999/064, CIV. 855/1992.**

District Court,
Virgin Islands,
Appellate Division,
D. St. Thomas.

Sept. 24, 2003.

Robert W. Bornholt, AAG, for Appellant.

Ireston E. Moore, Esq., Morris M. Goldings, Esq., Ellen S. Shapiro, Esq., for Appellees.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands, THOMAS K. MOORE, Judge of the District Court of the Virgin Islands, and DARYL DEAN DONOHUE, Judge of the Territorial Court, Sitting by Designation.[1]

## OPINION OF THE COURT

PER CURIAM.

The Government of the Virgin islands ("appellant", "Government") appeals the Territorial Court's confirmation of an arbitration award in this condemnation action. Appellant raises a singular issue on appeal: Whether an assistant attorney general has the legal authority to agree to and engage in binding arbitration to determine the amount of compensation to be awarded a property owner. Answering that question requires consideration of several submissues, which the parties present, including: 1) whether estoppel applies to bar the Government from questioning the validity of the arbitration process here; 2) whether arbitration is permissible to resolve disputes under the eminent domain statute, during the course of litigation, and; 3) whether the arbitration agreement in advance of a specific legislative appropriation to pay the award was statutorily barred, in light of the statutory requirements for the formation of government contracts.

For the reasons which follow, this Court will affirm the Territorial Court's confirmation of the arbitration award, there be-

1. The Honorable THOMAS K. MOORE was recused from hearing the instant appeal.

ing no statutory impediment to enforcement of the agreement to arbitrate.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

The statement of facts are adopted largely from the Third Circuit's memorandum opinion in *Brown v. Francis*, 75 F.3d 860 (3d Cir.1996), [Appendix ("App.") at 121–29], and from the current record.

Sometime prior to 1989, Milead Associates owned commercial property at Parcels 6 and 9, in Estate Thomas, Kings Quarter, St. Thomas consisting of 2.64 U.S. acres. During that time, the Government commenced negotiations in an attempt to acquire the property by eminent domain to develop a federally-funded highway project in Long Bay ("the Long Bay project"). However, before completion of those negotiations, the property was sold to Jolie Stahl and Barry Brown ("appellees", "co-trustees"), as co-trustees of the Long Bay Trust, for $3.25 million.

The co-trustees subsequently filed an action for inverse condemnation in the District Court of the Virgin Islands, pursuant to title 28 section 436 of the V.I.Code, claiming the government had effected a *de facto* taking of their property through its approval of plans for a highway affecting that property. The Government filed a motion to dismiss below based on lack of jurisdiction. That motion was denied with prejudice. Subsequently, the Government filed an eminent domain action in the Territorial Court, pursuant to title 28, section 411 *et.seq.* of the Virgin Islands Code. That complaint included a declaration of taking, filed by the governor of the Virgin Islands, estimating the amount anticipated to be paid for the property at $1.2 million. [App. at 3–6]. The estimated amount was deposited with the Territorial Court. [*Id.*]. An order vesting title in the property to the government was entered by the Territorial Court on September 1, 1992. [App. at 18–20]. Thereafter, the co-trustees sought removal of the condemnation claim to the District Court, based on diversity of citizenship, and removal was granted over the government's objections. The District Court denied a motion to dismiss by the government, in which it asserted the court lacked subject matter jurisdiction. Just prior to a scheduled trial, the parties entered into a written joint stipulation to refer the dispute to binding arbitration, and also agreed that a court judgment would be entered on any award issued. [App. at 80].[2] That agreement was approved by the Court. Pursuant to that agreement, an arbitration hearing was held on October 5–6, 1994. The Government participated in those proceedings. The arbitrator issued an award of $2.89 million on October 24, 1994. [App. at 83–89].

By letter dated December 6, 1994, almost two months following that award, the then-Public Works commissioner wrote to the Attorney General of the Virgin Islands, apparently in response to an earlier inquiry, advising her that the federal government would not contribute to the arbitration award for any amounts in excess of $1.6 million. [App. at 98]. On December 7, 1994, the Government filed its motion to dismiss the award, asserting mistake, lack of authority to enter into such an agreement, and inapplicability of the Federal Arbitration Act ("FAA"). [App. at 90–93]. The co-trustees opposed the government's motion and filed a Motion to Confirm the award. The District Court (Moore, J.) subsequently confirmed the arbitrator's award on the co-trustees' motion, rejecting

---

**2.** Robert W. Bornholt, the attorney now prosecuting this appeal, was the assistant attorney general who signed the agreement on behalf of the government. [App. at 82].

the Government's argument that the contract should be voided based on mutual mistake.

The government filed an appeal to the Third Circuit Court of Appeals, in *Brown v. Francis*, cited *supra*, challenging the court's confirmation of the arbitration award and removal to federal court based on diversity of citizenship. The Third Circuit concluded that removal was improper, holding the Territorial Court was the proper forum to consider that claim, as the Government was not deemed a "citizen" for the purpose of establishing diversity of citizenship. *See, Brown*, 75 F.3d at 865. Accordingly, that court vacated the District Court's order confirming the arbitration award and remanded the case to the District Court for a determination of the inverse condemnation claim, while remanding the eminent domain claim to the Territorial Court. *Id.*

Following remand, the Territorial Court, after a hearing on the matter, entered a memorandum opinion and order confirming the arbitration award, thereby rejecting the Government's argument that its attorney general lacked authority to agree to arbitration. (App. at 234–54). The Government now appeals from that order.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ This Court has jurisdiction to review final judgments and orders of the Territorial Court in civil cases. *See*, VIRGIN ISLANDS CODE ANN. tit. 4, § 33(1997). Because the issues on appeal present questions of law and statutory interpretation, our review is plenary. *See*, STEVEN A. CHILDRESS AND MARTHA S. DAVIS, FEDERAL STANDARDS OF REVIEW § 4.8–4.12 (3d ed.1999); *see, also, Coastal Gen. Const. Services, Inc. v. Virgin Islands Housing Auth.*, 238 F.Supp.2d 707, 708–09 (D.Virgin Islands 2002); *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir.2001) (reviewing motion to vacate arbitration award).

### B. Enforceability of the Arbitration Agreement

The Government argues generally that the arbitration award is unenforceable as a matter of law and cites three primary grounds in support of that result: 1) the attorney general who signed the arbitration agreement lacked contracting authority; 2) the stipulation entered into by the government to submit the issue to arbitration is void *ab initio* for failure to adhere to the statutory procedures for government contracting, and; 3) the amount of compensation in an eminent domain case is not an arbitrable issue, given the specific procedures established in the applicable statute. Each will be addressed in turn.

### 1. The Assistant Attorney General's Authority

■ The Government acknowledges the existence of an agreement to submit the issue of compensation to an arbitrator, but now attempts to repudiate that agreement on grounds, *inter alia*, the assistant attorney general who signed it lacked authority to enter into a contract on the Government's behalf.[3]

---

3. The appellees, however, contend the Government waived its right to challenge this issue, as well as the arbitrability issue, by voluntarily submitting itself to, and participating in, that process without objection, However, based on precedent, *see*, e.g., *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791(1917) (no estoppel applies to bar government from questioning authority of its agent to act); *SIU de P.R. v. V.I. Port Auth.*, 42 F.3d 801 [3d Cir.1994], any claim of waiver or estoppel in challenging the authority of its agent would be ineffective against the government under

As an agent for his client, an attorney may freely enter into agreements regarding procedural aspects of the case, but may enter into agreements substantially impacting on the principal's case only to the extent he has the actual authority to do so. *See,* e.g., RESTATEMENT (SECOND) OF AGENCY §§ 50, 7, comment c(1958). Actual authority may be express or implied from the conduct of the principal, the circumstances of the case, or the nature of the transaction as one customarily associated with the underlying acts which were expressly authorized. *Id.* at §§ 35,50. Such authority may also be reasonably "implied by words, deeds, custom, acquiescence, and other circumstances," or where the acts committed are considered to be "an integral part of the duties assigned to a Government employee." *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed. Cir.1989) (remanding for determination of whether government employee acted with implied authority) (citing J. Cibinic & R. Nash, *Formation of Government Contracts* 43 (1982); *United States v. Bissett–Berman Corp.,* 481 F.2d 764, 768–69 (9th Cir.1973) (holding the government's attorney had the implicit authority to bind the government in matters related to the litigation, despite the absence of express authority for the specific transaction)); *see, also,* RESTATEMENT at §§ 7, 35.

In the Virgin Islands, an assistant attorney general is authorized to "appear for and represent the government" in civil proceedings, by virtue of title 3, section 114(a)(1) of the Virgin Islands Code. That authority extends to representation "before all administrative tribunals or bodies of any nature, in all legal or quasi-legal matters, hearings or proceedings."[4] 3

V.I.C. § 114(a)(6). Inherent in an attorney general's authority to represent the government in such proceedings is the capacity to enter into arbitration or similar agreements to move toward resolution of the dispute in a pending case, as it merely refers the action to another tribunal and shapes the procedure by which the case is ultimately resolved, without compromising the cause. *See,* e.g., 21 RICHARD A. LORD, WILLISTON ON CONTRACTS § 57:40 (4th ed.2003) (citing *Alexandria Canal Co. v. Swann,* 46 U.S. 83, 5 How. 83, 12 L.Ed. 60 (1847) (noting that attorney presumed authorized to consent to refer to arbitration matters involved in suit); *see, also,* 48 A.L.R. 4 th 127 (citing *Bivans v. Utah Lake Land,* 53 Utah 601, 174 P. 1126(1918)); RESTATEMENT (SECOND) OF AGENCY § 50. As with civil cases in general, while the eminent domain statute does not specify the authority of an assistant attorney general to enter into stipulations or similar agreements regarding the manner of the proceedings, it is recognized that such authority falls within the general duty to conduct and manage the pending litigation. *See,* e.g., 48 A.L.R.4th 127 (citing *Holker v. Parker,* 7 Cranch 436, 11 U.S. 436, 449, 3 L.Ed. 396 (1813) (noting that the "general practice throughout the United States for suits to be referred to arbitration by consent of counsel) without special authority, and that this universal practice must be founded on a general conviction that the power of an attorney at law over the cause of his client extends to such a rule."); *Everett v. Charlestown,* 94 Mass. 93 (1866) (noting that an attorney representing the city in an eminent domain action acted within his scope of authority

---

these facts. Therefore, plenary review is appropriate here, despite the government's failure to raise that issue below.

4. An eminent domain action is, essentially, a civil action, governed by the rules of civil procedure—at least to the extent not inconsistent with the local statute. *See,* 28 V.I.C. § 416(b); FED. R. CIV. P. 71A(a).

in agreeing to submit the dispute to arbitration without first obtaining the city's express consent; an attorney has the inherent authority to bind his client by an agreement for arbitration, merely another forum for resolving disputes, during the course of pending litigation)); 7A C.J.S. *Attorney and Client* § 204 (2002) (attorney employed to bring or defend an action has the inherent authority to submit a pending case to arbitration, where done through the court).[5] Thus, the court-approved stipulation regarding the manner in which the case was to proceed required no special authority by the government.

■■ However, even if we were to accept the government's argument that the stipulation was initially made without proper authorization, the facts of the instant case nonetheless support upholding the agreement. An agreement by an attorney may be validated by the principal's later ratification, through its conduct, silence, acquiescence, or failure to seasonably repudiate the agreement. *See,* RESTATEMENT (SECOND) OF AGENCY §§ 82 (defining ratification), 93–94 and comment a(discussing affirmance); *Bivans,* 174 P. 1126.

In this instance, the assistant attorney general assigned to the case not only agreed to submit the case to an arbitrator, but also actively participated in the proceeding to its completion. It is also worth noting here that the stipulation to submit the instant dispute to arbitration was signed and approved by the court on September 16, 1994. [App. At 79–92]. Trial was stayed pending resolution by the arbitrator. Following a two-day arbitration hearing in October, an arbitration award was finally issued on October 24, 1994—over one month after the contract between the parties was executed and several weeks following the arbitration hearing. It is apparent the government at no time challenged its attorney general's authority—either after the agreement was executed and approved by the court, during the arbitration proceedings, or prior to the award being issued. The Government certainly had reason to know of the agreement prior to the award and the decision to forego trial, yet it stood silent. Only after an unpalatable award was issued—and only after apparently failed attempts to secure federal contribution for the award [App. at 98]—did the Government stand to object to the issue being put to the arbitrator in the first instance. Therefore, were we to find that the stipulation was initially signed without actual authority, there remain grounds to sustain its validity on a theory of ratification, under the facts present here.

To permit the Government—or any other party to such an agreement, for that matter—to agree to forego trial in favor of alternative dispute means and then freely retreat from that agreement merely be-

---

5. *Cf., Powell v. Pennsylvania R. Co.,* 166 F.Supp. 448, 455 [E.D.Pa.1998] (rejecting argument that attorney in civil case was not fully authorized by the nature of his employment and without consulting his client to enter into a binding agreement to submit certain issues to the court with a jury), *reversed in part on other grounds,* 267 F.2d 241 (3d Cir. 1959); *Smith v. Barnes,* 29 N.Y.S. 692 [1894] [stipulation by attorney to have case heard by a referee in lien of a jury was binding on client, without need for special authority or consent, because matters of procedure during the course of pending litigation is within the attorney's authority]; *State v. Graham,* 19 N.J.Super. 70, 88 A.2d 5, 6[D.N.J.1992}] ("An attorney for a party has implied authority to enter into stipulations and agreements in all matters of procedure during the progress of a trial, which are necessary or incidental to the management of the suit and which affect only the procedure or remedy as distinguished from the cause of action itself; and the party is bound thereby.") (citing 5 Am.,Jur. Attorneys at Law § 91).

cause the outcome is unfavorable, would be to totally diminish the value of alternative methods of finally resolving disputes. The Government has submitted no authority to convince this Court that it should disregard the recognized role of an assistant attorney general in fully representing the government in court proceedings and making such legal determinations and stipulations as are intended to resolve the litigation,[6] to include resort to alternative dispute resolution procedures.

### 2. Effect of Government Contracting Statute

 In further support of its argument that the assistant attorney general acted without statutory authority, the Government argues the arbitration agreement failed to satisfy the standards for government contracting in title 31, section 231 et. seq. The Government specifically relies on section 248 of that statute, which is titled "Unauthorized purchases" and which provides in pertinent part:

No contract or purchase on behalf of the government shall be made unless the same is authorized by law or is under an appropriation adequate to its fulfillment.

31 V.I.C. § 248(a). That statute purports to outline the procurement procedures which must be adhered to in contracts for "supplies, materials, equipment and contractual services, and all sales of personal property." *Id.* at §§ 236, 232[1]. The applicability of this provision to the instant contract arising during an ongoing civil case and in the context of a condemnation action is doubtful, given the language of sections 232 and 236 noted above and given the limitations of sections 231a(a),(e), which except condemnation proceedings from the procedures applicable to contracts for government acquisition of real property. *Compare, id.* at § 231a (g),(h)(noting inapplicability to other acquisitions of real property). Nonetheless, similar language in title 33, section 3101, which generally limits the authority of an officer of the government to create binding agreements without legal authorization or prior appropriations, requires the equivalent inquiry urged by the government and is applicable here. That statute provides:

### § 3101. Expenditures or contracts in excess of appropriations.

"No officer or employee of the Virgin Islands shall make or authorize an expenditure from, or create or authorize an obligation under, any appropriation or fund in excess of the amount available therein; nor shall any such officer or employee involve the government in any contract or obligation for the payment of money for any purpose, in advance of appropriations made for such purpose, ***unless such contract or obligation is authorized by law.***"

33 V.I.C. § 3101 (emphasis added). The enforceability of contracts creating obligations as against the government, under either title 31 or title 33, depends on strict adherence to the statutory procedures for their formation. *See, e.g.,* V.I.C. § 249; *Reese v. Government of the V.I.,* 277 F.2d 329, 333 (3d Cir.1960) (citations omitted). Contracts failing to adhere to the statute's mandates are deemed void *ab initio* and are unenforceable, even under equitable doctrines. *See,* 31 V.I.C. § 249(a); *Heyl & Patterson Intern., Inc. v. F.D. Rich Housing of Virgin Islands, Inc.,* 663 F.2d 419, 428 (3d Cir.1981)(discussing sections 248 and 3101). These limitations notwithstanding, the government's argument that the prior funding requirement precludes a

---

**6.** This Court does not attempt to make any judgment on the authority of an attorney general to enter into a settlement agreement without express consent.

finding of a valid arbitration agreement here is flawed in several respects.

■ First, the prior appropriations requirement is but one part of the equation and does not operate to bar contractual obligations which are otherwise "authorized by law." *See,* 33 V.I.C. § 3101; *see, also, Heyl,* 663 F.2d at 429 (absent appropriation to support government contract, the party seeking relief has the burden to show that the contract was alternatively "authorized by law" to be valid). As the trial court noted, having completed a taking of the property by eminent domain prior to final judgment, the Government was already statutorily obligated and authorized by law to compensate the property owners, by virtue of the takings clause of the Fifth Amendment of the U.S. Constitution, made applicable to the Virgin Islands through Section 3 of the Revised Organic Act of 1954 (codified at 48 U.S.C. § 1561) and title 28, section 421(a)(5) of the Virgin Islands Code. Virgin Islands law makes clear that the government's obligation to pay just compensation, as determined in an appropriate action, vests upon the taking of private property, as does the right of the property owner to receive such an award.

> Upon the filing of said declaration of taking and deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the property in fee simple absolute ... shall vest in the Government of the United States Virgin Islands .... and

the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein ....

28 V.I.C. § 421(a)(5). Thus, the legal authority for the condemnation of private property, and the concomitant obligation to compensate private property owners, is well-established. Under those circumstances, the absence of prior funding for that obligation does not operate to invalidate the statutory authority to compensate property owners subjected to a government taking.

Alternatively, the legislature additionally appears to have provided for the prior appropriation of funds for compensation in condemnation proceedings, further satisfying the requirement of section 3101. Title 28, section 422 provides that "the necessary sums to carry out the provisions of this section are hereby appropriated out of any funds in the General Fund of the Treasury of the Virgin Islands not otherwise appropriated, unless otherwise provided for by law." *Id.* at § 422(c). Thus, an appropriation is made, for the purpose of satisfying the statutory requirements at issue here, where the Legislature incorporated within the statute the funding source and authority to tap those resources to compensate property owners subjected to a government taking.[7]

Moreover, while section 421, indeed, requires the government to deposit with the Court an amount of *estimated* compensa-

---

7. *See, e.g., F.D. Rich Housing of V.I., Inc. v. Government of V.I.,* 17 V.I., (D.V.I.1980)(noting that a prior appropriation is made where, "the legislative department of government designates a particular fund, ... to be applied to some general object of governmental expenditure, or to some individual purchase or expense .... Thus, the existence of an appropriation does not require that all internal mechanisms of the executive branch are activated; instead, as long as the legislature has designated funds for use by the executive branch and the appropriation measure has received executive approval, an appropriation has been made") (citing BLACK'S LAW DICTIONARY 93 (5th.ed.1979)) (internal quotation marks omitted).

tion, the succeeding provision of that statute clearly contemplates that the amount so deposited may well fall short of the amount of actual compensation and does not purport to render invalid any obligation for payment incurred in excess of the deposited amount. *See,* 28 V.I.C. § 422(a).

> In any judgment rendered in a condemnation proceeding ... in which the amount determined by the court as just compensation for the property or rights therein taken is greater than the amount deposited by the condemning entity in the court as just compensation for such property or rights therein, *the [Government] shall pay the amount of the difference between the sum thus deposited by the condemning entity and the sum that has been determined by the court as just compensation for said property or the rights therein ...*

*Id.* (emphasis added). Therefore, the plain language of the statute, when taken as a whole, supports a finding that a prior appropriation was not required to validate the compensation here, where the legislature has already engrafted the authority for such payments in the statute. Were it required, however, the funding requirement would be satisfied, given the general appropriations provision in section 422(c) of the statute. The cases relied on by the Government are distinguishable on their facts and do nothing to negate the clear import of section 422 or to bring this case within the prohibitions of section 3101.

*See, SIU de P.R. v. V.I. Port Auth.,* 42 F.3d 801 (3d Cir.1994) (discussing official's overstepping of authority in agreeing to the accumulated sick leave to retirees); *Smith v. Dep't of Educ.,* 942 F.2d 199, 200–02 (3d Cir.1991) (denying payment to contractor for services provided under defective contract); *Reese v. Government of V.I.,* 277 F.2d 329 (3d Cir.1960) (invalidating agreement for sale of public homestead lots without governor's signature).

### 3. The Absence of Arbitration Remedy In The Statute.

█ Having determined the assistant attorney general acted within the scope of his authority, we turn now to the Government's argument that the amount of compensation in eminent domain cases is not an arbitrable issue. The Government argues the absence of a specific statutory declaration in the eminent domain statute, specifying arbitration as a remedy, negates the validity of arbitration agreements in that context.[8]

### a. Commission has no exclusive jurisdiction.

In support of its argument that arbitration is not contemplated as a means of resolving the compensation due property owners whose interests must give way to the public's, the government first points to the provisions for determination of that issue by a commission in Title 28, section 411, *et. seq.,* which set forth the procedures for a government taking of proper-

---

8. The Government also argues unpersuasively that arbitration agreements are generally unenforceable in the Virgin Islands, absent specific statutory authority providing that remedy. In support of that argument, the Government averted that the Federal Arbitration Act, 9 U.S.C. §§ 1–14, is inapplicable to districts in the territory and that the absence of an arbitration-provision in the eminent domain statute reflects legislative intent to preclude resolution of issues through alternative

dispute means. This Court, relying on prior decisions of the U.S. Supreme Court, has already resolved the issue of applicability of the FAA in the V.I. in the affirmative. *See, Government of V.I. v. United Indus. Workers,* 987 F.Supp. 439, 444–46 (D.Virgin Islands 1997), *aff'd.,*169 F.3d 172(3d Cir.1999); *Tutu Park, Ltd. v. O'Brien Plumbing Co., Inc.,* 180 F.Supp.2d 673, 675–76 (D.Virgin Islands 2002). Therefore, we see to reason to again revisit this issue, which is by now settled law.

ty. While that statute vests authority in the court to determine the necessity and appropriateness of any proposed condemnation action, it also limits the court's jurisdiction to consider the issue of "just compensation." *Id.* at § 417(4) ("The court has power to determine all issues other than the amount of just compensation."). However, that section must be read in concert with section 418, which reserves the determination of "just compensation" to an independent commission established by the court *only under limited circumstances:*

> (a) If the court is satisfied that the public interests require the taking of the property, *it shall make an order appointing a commission of three competent persons resident in the Virgin Islands to determine the issue of just compensation, and fixing their compensation, if*
>
> > (1) *any party files a demand* for trial by commission with in the time allowed for answer or within further time as the court may fix; or
> >
> > (2) *the court determines in its discretion that,* because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, *the issue of just compensation should be determined by a commission.*

*Id.* at § 418(a)(1)-(2) (emphases added). It is clear from the face of the statute that the legislature did not intend an independent commission to be the exclusive means of determining compensation, nor did it intend to mandate formation of a commission in every circumstance. While subsection [a], indeed, requires that a commission be formed *if requested* by either party or if the court determines that doing so would best serve the ends of justice, the statute does not purport to make the remedies available under that section the exclusive

means by which compensation is determined, or to remove the authority of the court to make such determinations. To the contrary, section 418(b) notes: "If a commission is not appointed under subsection (a) of this section, the issue of just compensation shall be tried by the court." Because the appointment of a commission is conditioned on either a request or a determination of necessity, no error can be assigned to the court's failure to appoint an independent body where, as here, the parties did not request resolution by a commission.

### b. Statutory language does not limit parties to litigation.

The Government additionally makes much of the above-cited language "shall be tried by the court," its underlying premise being that this language precludes a determination by an arbitrator or any other tribunal. This Court disagrees.

 Arbitration is a completely voluntary remedy, and litigants may freely contract to refer their dispute to arbitration, as an alternative to costly litigation. Therefore, "if parties wish to have a legal question resolved by an arbitrator rather than a judge, they are free to submit their claim to arbitration." *United Indus. Workers, Service, Transp. v. Government of V.I.,* 987 F.2d 162, 168–169(3d Cir.1993). The parties' agreement confers jurisdiction to the arbitrator to hear the issues specified therein. *See, Pennsylvania Power Co. v. Local Union No. 272 of Int'l Bd. of Elec. Workers,* 886 F.2d 46, 50(3d Cir.1989) (jurisdictional objection waived where party "clearly indicate[s] his willingness to forego judicial review"); *Yorkaire, Inc. v. Sheet Metal Workers Int'l Assoc. Local Union No. 19,* 758 F.Supp. 248, 253–55 (E.D.Pa.1990), *aff'd without opinion,* 931 F.2d 53 (3d Cir.1991) (holding that voluntary submission of issue to arbitration con-

stituted jurisdictional waiver); *see, also,* 56 A.L.R. 5th 757 (1998) (objections to arbitrability "should be raised before the issue is submitted for a hearing on its merits, because the party may not voluntarily submit an issue to arbitration and then, if he or she suffers an adverse decision, move to set aside the adverse award on the ground that it was not an arbitrable issue.");*United Indus.,* 987 F.2d at 169 ("Allowing [party], which initiated arbitration, to vacate the award on the grounds that it never agreed to arbitrate the dispute would give [it] two bites at the apple, arbitration and litigation, to obtain a favorable outcome."); *but see, Utah Power & Light Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791(1917) (Government may, as here, challenge its agent's authority). Public policy favors resort to alternative methods of resolving civil disputes, short of costly and often protracted litigation. Therefore, arbitration has emerged as an acceptable—even desirable—remedy, and such agreements will generally be enforced, absent violation of existing statute. *Id.; see, also,* 9 U.S.C. § 2. This Court finds no such violation here, where the applicable statute does not expressly prohibit resort to alternative dispute resolution tools and where Virgin Islands law otherwise recognizes arbitration as an appropriate means of resolving disputes.

▓▓▓▓▓ While title 28 does not speak directly to the arbitration remedy nor provide a framework for its enforcement, Virgin Islands law provides for judicial enforcement of arbitration awards, through RESTATEMENT (SECOND) OF CONTRACTS § 345(f), made applicable to the Virgin Islands through 1 V.I.C. § 4.[9] In this regard, the Restatement provides that "the judicial remedies available for the protection of [contract] interests stated in § 344 include a judgment or order . . . [{f]enforcing an arbitration award." RESTATEMENT (SECOND) OF CONTRACTS § 345(1979). The Restatement thus makes clear that arbitration agreements are enforceable, though reserving the procedures for their enforcement for determination by local statute. *Id.* at comment e("[b]ecause questions concerning the enforcement of arbitration awards depend largely on statute, they are not considered in detail in this Restatement."). In the absence of such local law specifying procedures for the enforcement of such awards, courts seek guidance in the procedures set forth in the Federal Arbitration Act. *See, Government of V.I. v. United Indus. Workers,* 987 F.Supp. 439, 444–46 (D.Virgin Islands 1997),*aff'd,* 169 F.3d 172 (3d Cir.1999)(noting that doing so "will not only implement the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms, but it will also fulfill the intention of the parties to have their agreements judicially validated and enforced.") (citations omitted); *Tutu Park, Ltd. v. O'Brien Plumbing Co., Inc.,* 180 F.Supp.2d 673, 675–76 (D.Virgin Islands 2002);see,also,9 U.S.C. § 2.[10] Hence, in this

---

**9.** 1 V.I.C. § 4 provides:

The rules of the common law, as expressed in the restatements of law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

**10.** The statute provides:

A written provision . . . or a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, of an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as

eminent domain action, as with other civil actions for which resolution generally lies with the court, *see,* 28 V.I.C. § 416; *see also,* FED. R. CIV. P. 71A, the parties are free to enter into agreements to submit to other means of resolving their disputes, to have consent judgments entered against them, or any other means of avoiding full-fledged litigation. The right to freely contract to settle or resolve such disputes through arbitration is no less effective where the Government is a party to the transaction. *See, United States v. Bankers Ins. Co.,* 245 F.3d 315, 321(4 th Cir.2001)(citing *Lynch v. United States,* 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *United States v. Winstar Corp.,* 518 U.S. 839, 895, 116 S.Ct. 2432, 135 L.Ed.2d 964(1996)).

Given the contractual nature of agreements to arbitrate, the absence of any statutory preclusion of that remedy, and the policies favoring resolution of disputes short of litigation, this Court finds unavailing the Government's suggestion that arbitration is not a permissible means of resolving issues arising under the eminent domain statute. We, therefore, find that the issue of compensation was properly before the arbitrator pursuant to the agreement of the parties. *See, e.g., Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503,1512 (3d Cir.1994) (jurisdiction of the arbitrator determined by the four corners of the agreement);*AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 648–49(1986)("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.") (citation omitted).

## III. CONCLUSION

Given the well-settled acceptance of arbitration as a tool for resolving disputes in the Virgin Islands, we reject the government's argument that arbitration agreements are not generally enforceable in the Territory or specifically under the statutory scheme at issue here. There is further nothing in the condemnation statute evidencing a legislative policy disfavoring arbitration in this instance. In the absence of clear statutory prohibition of that private remedy, the agreement to arbitrate and enforcement of the award were permissible under common law contract principles, as reflected in the restatements of law, and the Federal Arbitration Act. In view of the statutory authority conferred on attorneys general to generally manage civil actions on the government's behalf and the general recognition that agreements to submit claims to arbitration or other tribunals are within such authority, we must additionally reject the government's assertion that the arbitration agreement must be voided for lack of actual authority. Accordingly, the Territorial Court's confirmation of the arbitration award will be affirmed. An appropriate order follows.

### *ORDER OF THE COURT*

For the reasons stated in an accompanying Memorandum Opinion of even date, it is hereby

**ORDERED** that the Territorial Court's confirmation of the arbitration award is **AFFIRMED.**

---

exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.